[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was before the court on an Application for Prejudgment Remedy. The standard for the issuance of a prejudgment remedy is well established.
 General Statutes § 52-278d (a) permits a trial court to grant a prejudgment remedy if "the plaintiff has shown probable cause that . . . a judgment will be rendered . . . in the plaintiff's favor . . ." We emphasize that a hearing on an application is not a full-scale trial on the merits of the plaintiffs' claims; Fischel v. TKPK, Ltd, 34 Conn. App. 22, 24, 640 A.2d 125 (1994); Hoke, Inc. v. Circuits, Inc., 26 Conn. App. 804, 805, 602 A.2d 1075 (1995); but rather concerns only whether and to what extent the plaintiff is entitled to have property of a defendant held in custody of the law pending final adjudication of the merits of the action. Tyler v. Schnabel, 34 Conn. App. 216, 220, 641 A.2d 388 (1994).
Bosco v. Arrowhead by the Lake, Inc., 53 Conn. App. 873, 874 (1999).
The court finds the following facts, based on the evidence presented.
The plaintiffs entered into an agreement with the defendants to assist them in procuring (a) financing to raise cash out of two properties (in Ridgefield, Connecticut and New Rochelle, New York, respectfully) that defendants own, and (b) financing as a first mortgage on a property to be purchased by the defendants in North Branford.
A document memorializing the plan and the method of payment of plaintiffs by defendants for these services was signed for each financing transaction anticipated. These documents are fashioned, "Conditional Commitments." They are signed by plaintiffs and defendants.
Plaintiffs procured financing for defendants for the Ridgefield and New Rochelle properties. The financing procured by the plaintiffs for each of CT Page 1923 these properties had different repayment terms than were outlined in the Conditional Commitment for each property, respectively. Defendants accepted each of these financing proposals, closed on them, and paid plaintiffs for their work in procuring the finances. Plaintiffs were paid a fee equal to 3.5 percent of the loan proceeds. These fees paid to the plaintiffs were distinct and separate from financing fees paid to the lending institution.
The third transaction contemplated financing the amount of $3,400,000 on property to be purchased in North Branford is the matter at issue here. After working with more than one lender, the financing prospects that plaintiffs were able to procure for the North Branford property were not the same as those laid out in the Conditional Commitment for that that property. The financing proposal from the lender, Fremont Investment and Loan (Fremont), called an "Expression of Interest," proposed the financing of $3,400,000 on repayment terms apparently less advantageous to the defendants than those contemplated in the Conditional Commitment. Notwithstanding that, on October 12, 2002, the defendants (together with their legal counsel) signed the "Expression of Interest" and directed plaintiff to undertake to obtain a finalized loan commitment from the prospective financier, Fremont. Defendants made clear to plaintiffs that there was an October 31, 2002 deadline by which the defendants must procure a financing commitment. Plaintiff proceeded to secure that commitment.
On October 25, 2002 the defendants, through counsel, sent notice to plaintiffs that they no longer desired the Fremont financing. For the two days immediately prior to this notice, defendants, through counsel, worked with plaintiffs (as they had continuously prior to then) in providing the necessary supporting information to procure the commitment. Without further efforts by the plaintiffs after the letter of October 25, 2002, notice was received on October 29, 2002 that defendants had been approved for financing from Fremont for $3,400,000 in accordance with the terms of the Expression of Interest.
Defendants did not close the financing transaction with Fremont. Plaintiffs have made demand for payment of the fee they claimed they have earned for procuring acceptable financing for the defendants.
The fee sought by plaintiffs is three percent of the loan amount Fremont had approved of, namely $3,400,000.
The court finds that the evidence supports the conclusion that in the first two transactions, the defendants paid two fees to plaintiffs, based upon identical contract language, at three percent (plus a .5 percent CT Page 1924 premium for good work) of the loan amount for financing commitments different than the Conditional Commitments. That is exactly what the plaintiffs have established is likely to be the result here. The Expression of Interest was signed by the defendants as "a go ahead" for the plaintiffs. Plaintiffs completed their obligation by bringing the financing to fruition. The three percent fee, computed under an identical Conditional Commitment contract, should be computed in a manner consistent with the Ridgefield and New Rochelle properties.
As to the potential cross claims and set-offs for the quality of plaintiff's work the court does not find they support any reduction in the attachment. Defendants signed the Expression of Interest, essentially signaling plaintiff that the terms were acceptable. Plaintiff is not a guarantor of specific terms. Plaintiff is a finder of financing, using goals set for it as an ideal attainment. Defendants should never have told plaintiffs the Fremont deal should be pursued if the financing terms would not have been acceptable. Their signatures signified it was. They made a business decision to keep that iron hot while they pursued their own financing options elsewhere. Plaintiff performed.
As to the disputed factual issues in the case, the court finds there is probable cause that the plaintiffs will succeed in its cause of action proving there was a contract for the payment of the three percent upon the procural of financing. Of course, at trial, with such other additional facts and witnesses as may come before the court, a different result may occur.
The application for prejudgment remedy is granted in the amount of $102,000.
Munro, J. CT Page 1925